REPUBLIC BOND & MORTGAGE COMPANY *v.* DURRETT.

4-4979

Opinion delivered July 11, 1938.

534

*Donham & Fulk,* for appellants.

*House, Moses & Holmes* and *Eugene R. Warren,* for appellees.

SMITH, J. In September, 1935, the Tri-State Savings & Loan Association, hereinafter referred to as the association, and its subsidiary, Fidelity Finance Company, hereinafter referred to as the company, were placed in liquidation in the Pulaski chancery court, and Charles B. Thweatt was appointed receiver for both corporations. By order of court the assets of the company were transferred to the receiver of the association to be liquidated as the assets of one corporation. In the latter part of October, 1935, the receiver, under the order of the chancery court, sold the assets of both corporations to Taylor Roberts, as trustee, for a cash consideration of $240,000. The sale was approved by the court, and the assets were transferred to the Republic Bond & Mortgage Company, for whom Roberts was acting as trustee. The sale included, not only the physical assets of the cor-

porations, but all intangible assets, including choses in action.

After the sale by the receiver to Roberts, trustee, and the assignment by him to the Republic Bond & Mortgage Company, hereinafter referred to as the mortgage company, the receiver purchased from the mortgage company certain causes of action against C. L. Durrett and B. V. Searcy, the managing officers of the two corporations. Durrett was president of the association and Searcy was its vice president. Searcy was president of the company and Durrett was its vice president.

In February, 1936, the mortgage company filed a suit, in which the receiver, as its assignor, was joined as party plaintiff, against Durrett and others, asserting liability with respect to certain transactions which had occurred prior to the insolvency of the two corporations.

Searcy died and the cause was prosecuted against the administratrix of his estate, who made no defense and judgment was rendered against the estate for $7,264.65. and no one complains of that action. The cause was dismissed as to Durrett, and certain other parties who had been made defendants, upon the theory that they had acquired an interest in certain properties belonging to the two corporations which Durrett was charged with having misappropriated, and this appeal is from that decree and questions that order and decree of the court.

The transactions out of which the litigation arose were numerous and are very intricate and involved and a detailed statement thereof would protract this opinion to indefinite length. We shall be content to recite only such facts as are necessary to present the issues upon which the court below decided the case, and which we think are decisive of this appeal.

Durrett and Searcy together owned a majority of the stock in both of the corporations, and while each corporation had a board of directors they appear to have been mere figureheads and Durrett and Searcy ran these corporations as they might have operated a co-partnership business. The other directors appear to have been employees holding stock for qualifying purposes.

The receiver sold all the assets of both corporations to Roberts, as trustee for the mortgage company, which company later repurchased from the receiver certain causes of action against the officers of the corporation, and this suit was brought to enforce those demands.

Before these sales the Bank Commissioner took over the assets of the association for purposes of liquidation, and this automatically brought the company under the Bank Commissioner's control. Indeed, it is undisputed that the Bank Commissioner took charge of the affairs and assets of the company, as the latter appears to have been used chiefly to carry questionable assets belonging to the association, which owned the assets of the company, and all parties concede that the company was a mere agency of the association.

Searcy had died, and his widow, who became administratrix of his estate, took control of the business, but she was unable to agree with the other directors, and it was finally voted by the board of directors of the association (which had operated as a building & loan association) to go into voluntary liquidation, and the Bank Commissioner was asked to take charge of the affairs of the association pursuant to the provisions of act 54 of the Acts of 1933, p. 148. This is "An act to provide for and prescribe conditions and regulations for building & loan associations, to provide for voluntary liquidation of such associations, . . . , and for other purposes."

The Bank Commissioner, after taking charge of the assets of the association (the assets of the company being treated by all parties as a part thereof), proceeded to unwind its affairs. He insisted that an unauthorized use had been made of the assets by both Durrett and Searcy. He required the restoration of certain assets, and in completing what was intended as a full settlement of the liability of both Durrett and Searcy to these corporations he required Durrett to execute his note to the association in the sum of $1,211.71, and he entered a charge upon the books of the association against Searcy in the sum of $6,000. These orders appear to have been made with the

knowledge and approval of the acting directors of the association.

The principal item in controversy related to the purchase by Searcy of a mortgage note executed by the Niloak Pottery Company with money borrowed by Searcy from the company for that purpose and the subsequent acquisition of the capital stock and assets of the pottery company.

It appears certain that by the execution of the note above referred to, Durrett thought he had acquitted himself of all liability growing out of his connection with the two corporations.

This was the state of affairs when the receiver was appointed with the consent of all parties in interest, and among other assets taken over by the receiver was the note of Durrett above mentioned and the book charge against Searcy.

The receiver sold the title and interest of the association and the company in these assets, and his purchaser acquired that interest and nothing more. The sale covered assets having a book value of $700,000 for a cash consideration of $240,000, and the insistence is that this sale was an assignment of the causes of action here sued upon against the officers and directors of the association and the company for their wrongful use and mismanagement of the assets of these corporations.

The court below was ". . . of the opinion that the statute under consideration (act 54, *supra*) does not permit the sale by a receiver of causes of action against officers and directors for damages (for waste and mismanagement) unless the existence and propriety of such suits was known to the court and to the receiver, their institution authorized, and the suits themselves clearly included within the description of the assets sold, and their sale directed. It was not intended that the act should afford an opportunity for purchasers at such sale to speculate upon litigation, nor to give them the right at their own uncontrolled volition, free from the control of the court, to proceed or not to proceed according to their judgment alone."

The only information which the court could have had to the effect that it was proposed to sell and assign a cause of action *ex delicto* was the recital in the receiver's application for authority to sell that he proposed to sell the choses in action belonging to the two corporations, of which there were several, and in his report of sale that he had sold the choses in action.

We concur in this view. But the chancellor did not rest his decision upon this ground alone; nor do we. He made the finding—which we think is not contrary to the preponderance of the evidence—that Durrett made a full and complete settlement with the receiver of his liability upon the causes of action here sued upon.

We summarize the findings contained in the chancellor's able opinion—in which we concur—which lead to this conclusion. The receiver sold to the trustee of the mortgage company all the assets of the association and of the company, including choses in action. After the sale by the receiver to the trustee, and after the assignment by the trustee to the mortgage company the receiver purchased from the mortgage company certain causes of action against the officers of the two corporations in liquidation. Those causes of action against the officers of the corporation in liquidation were based upon charges of unlawful disposition of the assets of the corporations prior to the insolvency, making the officers responsible either to the corporations or to their creditors. As has been said, the suit was brought to enforce those demands.

After doing so, and without advising Durrett that he had done so, the receiver made demand upon Durrett for a settlement of Durrett's liability to both the association and the company. The testimony is conflicting as to just what this demand was. It appears that the receiver and the mortgage company were acting in concert. This is made certain by the fact that the mortgage company was the beneficiary of the settlement which the receiver made with Durrett, as will hereinafter be shown.

It appears equally certain that Durrett was unaware that the receiver was proposing a partial settlement.

The receiver, an able attorney, prepared the release, which required Durrett to pay the receiver $7,000 in cash in addition to the note for $1,211.71 which Durrett had executed in his settlement with the Bank Commissioner while that official was liquidating the assets of the association. Before agreeing to pay this additional $7,000 Durrett consulted an eminent attorney, who, before approving the settlement, wrote into the contract of settlement that it released Durrett from all claims which the receiver "now has or which he could, would or might at any time hereafter have . . . for or by reason or on account of any matter, cause or thing whatsoever, it being understood that this settlement is in full of all claims of the party of the first part (the receiver) on account of any connection of the party of the second part with either said Tri-State Savings & Loan Association or said Fidelity Finance Company, and by reason of any transaction of the party of the first part with either said association or finance company."

This comprehensive language leaves but little room for doubt as to what must have been the understanding and intention of Durrett and of his attorney in agreeing to pay $7,000 additional. If there were doubt upon this subject that doubt would be removed by the testimony that before the $7,000 was paid Durrett's attorney submitted the matter to the regular chancellor, who advised that, if and when the $7,000 was paid, Durrett would be released from all liability to either or both corporations on account of his connection with them. When later, after the $7,000 had been paid, this suit was brought upon the theory that Durrett had made only a partial settlement, the regular chancellor recused himself and a special chancellor was elected, who heard the cause and prepared the opinion herein referred to.

It is highly improbable that Durrett would have paid the $7,000, as he did do, for a partial release, and it is certain that both he and his attorney thought they were making a final and complete settlement of all claims of every character against him on account of his connection with either or both the association and the company.

It is insisted, however, that whatever may have been Durrett's understanding or even the intention of the parties to the release agreement the rights of the mortgage company are unaffected thereby, for the reason that the receiver had previously reassigned to the mortgage company the demands here sued on.

Immediately after this settlement and release by the receiver the mortgage company instituted the present suit against Durrett and the estate of Searcy, joining the receiver as its assignor, based essentially upon the same grounds as those settled by the receiver, but involving different transactions on the part of the officers prior to the insolvency of the corporations in liquidation.

It is to be remembered, however, that the receiver's sale to the mortgage company included Durrett's note for $1,211.71 which he had executed to the association pursuant to the direction of the Bank Commissioner while engaged in liquidating the association's affairs before the appointment of the receiver. This note was payable in monthly installments, which Durrett has met. The payments were continued after the receivership, and even since the note has been acquired by the mortgage company, and even after the institution of this suit. The mortgage company accepted the note and has received the benefit of it. It appears to be true also that in the transfer back to the receiver by the mortgage company the receiver agreed to pay the mortgage company 30 per cent. of the gross amount recovered from Durrett and to pay the mortgage company all that the receiver recovered from the estate of Searcy. These circumstances led the court below to make the finding that "The receiver in making the settlement was, therefore, representing both the plaintiff (the mortgage company) and himself in respect to all matters actually transferred to him by the plaintiff. Although the receiver had sold all the assets of the insolvent corporations to the plaintiff, and had repurchased from the plaintiff only a part of these assets, the release delivered by the receiver to Durrett in consideration of the payment of the $7,000 by Durrett is drawn exactly as if no sale had ever been made by the

receiver. No reference is made to the prior sale to the plaintiff. Nothing is said about the fact that the receiver at the time of the settlement is the owner only of certain claims of the character being settled. The claims being settled are not set out with particularity. The release recites that the parties have agreed that Durrett shall pay $7,000 'in full satisfaction and discharge of all claims and demands whatsoever,' those claims and demands being generally described previously in the release as 'claims that have arisen against the party of the second part by reason of his connection with the insolvent companies as an officer and director.' "

Certainly this finding is not contrary to the preponderance of the evidence, and we think fully warranted the chancellor in dismissing the suit against Durrett as being without equity.

Certainly Durrett had no reason to assume or believe that the cause of action against him had been split, if, indeed, that could have been done, which we think very questionable. *St. Louis-San Francisco Ry. Co.* v. *Davis & Son*, 157 Ark. 27, 247 S. W. 53; *Hemingway* v. *Grayling Lbr. Co.*, 125 Ark. 400, 188 S. W. 1186.

Durrett made a settlement, which apparently included the causes of action here sued on, and received a release, which was all-inclusive in its terms, and even though the mortgage company may not have authorized the settlement it has been a beneficiary of it, and we think the court below was correct in concluding that the suit should be dismissed for want of equity, and the decree is, therefore, affirmed.